NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2516
_____

FRANK B. DAY; ARTHUR WONG

v.

ROBERT W. WHITE,

Appellant
_____

On Appeal from the District Court
of the Virgin Islands
(D.V.I. No. 1-13-cv-00044)
District Judge: Honorable Wilma A. Lewis
_____

Argued December 10, 2018
Before: CHAGARES, HARDIMAN, and RESTREPO, *Circuit Judges.*

(Filed:  February 28, 2019)

Andrew C. Simpson [Argued]
Andrew C. Simpson, P.C.
2919 Church Street, Suite 5
Christiansted, V.I. 00820
        *Counsel for Appellant*

Kevin A. Rames [Argued]
Semaj I. Johnson
K.A. Rames, P.C.
2111 Company Street, Suite 3
Christiansted, V.I. 00820
        *Counsel for Appellees*

—————

OPINION[*]

—————

HARDIMAN, *Circuit Judge.*

This appeal arises out of a failed joint venture to develop a seaside residential property in Estate Green Cay on the island of St. Croix. Appellant Robert White agreed to contribute his oceanfront lot and to design and build a spec house; Appellees Arthur Wong and Frank Day agreed to fund the venture. From 2002 until 2005, Wong and Day, along with other joint venturers, made loans to White to fund construction. When the property had not sold by March 2005, Wong, Day, and White obtained a loan from the Bank of St. Croix (BSC) in the amount of $1,650,000.00 (the BSC Loan) which they used to buy out the other joint venturers. The BSC Loan was secured by a mortgage on the property. At the same time, Wong and Day loaned White $500,000.00 (the Wong/Day Loan) to service the BSC loan and other obligations secured by the property.

Unfortunately, months passed without a sale of the property, so in April 2006 the three men agreed to terminate the joint venture. They executed a Settlement Agreement and a Release Agreement under which White was given two years to sell the property. For their part, Wong and Day loaned White another $300,000.00—for a total indebtedness at that time of $842,008.00 (the Amended Wong/Day Loan)—so White

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

could continue to service the BSC Loan and pay other essential expenses. In the event the property was not sold by April 1, 2008, Wong and Day had recourse to a deed in lieu of foreclosure on the property, which White executed and placed in escrow.

The property was not sold by April 1, 2008. But for reasons not apparent in the record, Wong and Day did not seek to obtain the deed in lieu of foreclosure from the escrow agent until November of 2012. Five months later, Wong and Day sued White in the District Court for payment on the BSC Loan, just a few weeks after Wong and Day had purchased the BSC Loan from the bank. Critical to this appeal, Wong and Day did not sue White for breach of either the Settlement Agreement or the Release Agreement in seeking to recover on the BSC Loan.

The parties filed cross-motions for summary judgment and the District Court entered judgment in favor of Wong and Day and against White. But the Court did not grant judgment against White on the BSC Loan, which was the judgment Wong and Day sought. Instead, the Court granted judgment on a breach of contract claim that was neither pleaded nor argued by Wong and Day. The Court also granted Wong and Day summary judgment on their claim for payment on the Amended Wong/Day Loan, and dismissed White's counterclaim seeking to reform the contract.

White filed this timely appeal. For the reasons that follow, we will affirm in part and vacate in part. Because Wong and Day did not plead or argue a claim for breach of contract with respect to the BSC Loan, we will vacate the Court's summary judgment as to that loan and remand. We then explain why we will affirm the Court's summary

3

judgment as to the Amended Wong/Day Loan. We conclude by explaining our affirmance of the Court's dismissal of White's reformation counterclaim.

I[1]

The Settlement Agreement made White "solely responsible" for payments on the BSC Loan once the $300,000.00 in new money was exhausted. But by the Amended Wong/Day Loan's maturity date, White hadn't paid either the Amended Wong/Day loan or the BSC Loan. Five years later, Wong and Day purchased the BSC Note from the bank.[2] They sued White as owners of the BSC Note—alleging White "was in default of his obligations" under the BSC Note, and praying for "[j]udgment against Mr. White . . . on the BS[C] Note . . . in the full amount due and owing thereunder." First Am. Compl. at 2–3, No. 1:13-cv-00044 (D.V.I. Sept. 24, 2013), ECF No. 36 ("FAC"). The Court granted summary judgment, not "on the BS[C] Note," *id.*, but on the theory that White breached his contractual obligation in the Settlement Agreement to take sole responsibility for the BSC Loan.[3]

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291.

[2] The parties dispute whether, by purporting to purchase a debt on which they were primary obligors, Wong and Day instead discharged it. The District Court found Wong and Day indeed had discharged the loan. Because we will vacate the Court's summary judgment as to the BSC Loan, we need not address the issue.

[3] The Court was not entirely clear, in its liability opinion, as to whether it was granting summary judgment on the BSC Loan debt or on a breach of contract claim. But the Court clarified in its final damages judgment and opinion that it had granted judgment only on a breach of contract claim. *Day v. White*, 2017 WL 2563234, at *9 & n.16

4

But Wong and Day never pleaded a claim for breach of the Settlement Agreement, so the Court could not properly grant them summary judgment on it. *See Michelson v. Exxon Research & Eng'g Co.*, 808 F.2d 1005, 1009 (3d Cir. 1987) ("We have a problem with the notion of granting summary judgment on a claim that was never pleaded."); *Murray v. Commercial Union Ins. Co.*, 782 F.2d 432, 437 (3d Cir. 1986) ("[W]e decline to permit a party to argue on appeal causes of action that were not pleaded in district court.").[4] Nor did Wong and Day identify breach of the Settlement Agreement, with resulting damages, as a claim on which they were entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).

---

(D.V.I. June 12, 2017). Because the order establishing White's liability didn't decide damages and wasn't final, *Tokarcik v. Forest Hills Sch. Dist.*, 665 F.2d 443, 446 (3d Cir. 1981), the Court retained jurisdiction to modify its summary judgment order. *See* 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2737 (4th ed. Sept. 2018 update). So the Court's later clarification controls.

[4] Wong and Day pleaded White was "solely responsible" for paying the BSC Loan under the Settlement Agreement, FAC ¶ 10, and that he hadn't done so by the time the loan came due, *id.* ¶ 15. But they did not plead breach of contract damages caused by White's failure to perform under the Settlement Agreement. *See Chapman v. Cornwall*, 58 V.I. 431, 437 (2013) ("To establish a breach of contract claim, [the claimant] must prove that a contract existed, that there was a duty created by that contract, that such duty was breached, and that he suffered damages as a result."). The District Court held Wong and Day "incurred damages as a result of [White's] breach when they paid off the BSC Loan in order to prevent the Bank of St. Croix from foreclosing on the Property; and . . . are entitled to damages for Defendant's breach of the contractual arrangement." *Day*, 2017 WL 2563234, at *10. But Wong and Day never pleaded that. Instead, they pleaded White owed them the "outstanding sum under" the BSC Loan, as the loan's owners. FAC ¶ 18.

Wong and Day concede, as they must, that their suit "was couched as an action on a Promissory Note," but they nevertheless now argue that "White's breach [of the Settlement Agreement] . . . was the cornerstone" of the suit. Day Br. 36. This is telling for three reasons. First, actions to collect a debt are legally distinct from actions for breach of contract. *Carlos Warehouse v. Thomas*, 64 V.I. 173, 192 (V.I. Super. Ct. 2016). "[A] money debt is a primary obligation to pay a sum of money." 11 Corbin on Contracts § 55.5 (rev. ed. 2018). By contrast, "money damages are the legal substitute for the promised performance . . . ; the duty to pay them is a substituted or 'secondary' duty, one that arises only after a breach of the 'primary' duty created by the contract." *Id.* So an obligation to pay money damages for breach (which follows a failure to perform a promise) is conceptually distinct from an obligation to pay a debt.

Second, apart from this formal difference between actions on debt and breach of contract claims, White's obligation flows from an entirely different agreement under the FAC than it does under the District Court's holding.[5] As claimed in the FAC, White's duty flows from the BSC Note to Wong and Day as its owners—not from the Settlement Agreement to Wong and Day as parties to that contract. So the Court did not simply grant

---

[5] This distinguishes the cases Wong and Day cite for the proposition that "Courts routinely consider breach when determining actions for promissory notes." Day Br. 37 n.9. Those cases all involved breaches of the promissory note itself—not of obligations under a separate contract. *See WDC Miami Inc. v. NR Elec., Inc.*, 2015 WL 127852, at *1, *3 (D.V.I. Jan. 8, 2015); *In re Woodbridge Grp. of Companies, LLC*, 590 B.R. 99, 105 (Bankr. D. Del. 2018); *Weiss v. Salamone*, 116 A.D.2d 1009, 1010 (N.Y. App. Div. 1986).

summary judgment on an alternative theory of recovery; it granted judgment on a different cause of action, based on a different instrument.

Finally, the distinction between debt actions and breach of contract claims has further practical significance here, namely, for the calculation of money damages. Judgment for Wong and Day "on the BS[C] Note . . . in the full amount due and owing thereunder," FAC at 3, if ultimately proper would include interest accrued under the BSC Note after Wong and Day purchased it, while contract damages would not. *See Day v. White*, 2017 WL 2563234, at *9, *10–11 (D.V.I. June 12, 2017). And the relief in a debt action on the BSC Note, unlike damages for breach of the Settlement Agreement, would not include payments Wong and Day made on the BSC Loan before they purchased it.

So it does not elevate form over substance to distinguish Wong and Day's FAC as-pleaded from the Court's summary judgment. They invoke different causes of action, based on different agreements—which lead to different forms of monetary relief, calculated differently.

Wong and Day cite *United States v. D'Amario*, 593 F. App'x 97, 99 (3d Cir. 2014) (in turn citing *Jarbough v. Att'y Gen.*, 483 F.3d 184, 189 (3d Cir. 2007)), for the proposition that "[w]e are not bound by the label attached by a party to characterize a claim and will look beyond the label to analyze the substance of a claim." *D'Amario*, 593 F. App'x at 99 (internal quotation marks omitted) (quoting *Jarbough*, 483 F.3d at 189). In both *D'Amario* and *Jarbough*, though, we rejected artful pleading intended to evade jurisdictional bars. *See D'Amario*, 593 F. App'x at 99; *Jarbough*, 483 F.3d at 190. These

7

cases do not suggest that a district court should look beyond a claimant's pleadings and submissions to grant summary judgment *in a claimant's favor and against a defendant* on a claim that was never pleaded.

Because Wong and Day neither pleaded a breach of contract claim nor identified it as a claim on which they were entitled to judgment as a matter of law, we will vacate the Court's summary judgment as to the BSC Loan and remand.[6]

## II

White argues next that his liability on the Amended Wong/Day Loan was not before the Court on summary judgment, so it was wrong to enter judgment against him on that debt. We disagree.

In the Release Agreement, Wong and Day agreed to release White from his indebtedness under the Amended Wong/Day Note (for $842,008.00) if the property were transferred to Wong and Day under the Settlement Agreement. That transfer could happen if White failed to satisfy the BSC Loan or the Amended Wong/Day Loan. But as a condition of this release, White in turn released Wong and Day from claims arising from the BSC Loan and Wong/Day Loan Documents. Because he breached that promise when he counterclaimed below, the District Court held the release was void and Wong and Day were entitled to summary judgment on the Amended Wong/Day Loan.

---

[6] We express no opinion as to whether, on remand, Wong and Day should be granted leave to amend their complaint if requested.

8

We see no merit in White's argument that the Amended Wong/Day Loan was not before the Court on summary judgment. In moving for summary judgment on White's counterclaims, Wong and Day sought judgment on this very issue. Mem. in Supp. at 1, No. 1:13-cv-00044 (D.V.I. Jan. 14, 2014), ECF No. 40 ("Because White has violated the terms of the releases and covenants not to sue . . . he is obligated to pay Wong/Day the full amount due and owing under the $842,008.00 Wong/Day Note"); *id.* at 8 (arguing that "White has relinquished the protections afforded him under the Release Agreement and is therefore, [*sic*] indebted to Wong and Day under the Wong/Day Note"); *id.* at 9 (seeking judgment "that the Release Agreement at issue and covenants not to sue contained therein bar White's Counterclaim, and . . . Partial Summary Judgment in favor of Mr. Day and Mr. Wong and against Mr. White.").[7] So we will affirm the Court's summary judgment as to the Amended Wong/Day Loan.

## III

Finally, White contends the Court erred in dismissing his counterclaim for reformation, because that claim required a factual determination of the parties' true intent. If the contract's terms required him to pay the BSC Loan in full following delivery

---

[7] White argues, cursorily, that Wong and Day themselves breached the Release Agreement when they sued on the BSC Note, and that this "excused White's further performance under the release agreement such that his challenge to the [deed in lieu of foreclosure] would not be deemed a breach of the release agreement." White Br. 42, 14–15 n.6. He does not explain in any detail why this would be so, and devotes only a footnote and a sentence of his principal brief's conclusion to the point. That does not suffice to preserve the argument, so we decline to consider it. *See John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997).

of the deed in lieu of foreclosure, White's argument was that "such language did not reflect the true intent of the parties." Reply Br. 24. But White never argued that the *release* barring his suit didn't reflect the parties' intent.[8] Even if there were a mutual mistake about liability for the BSC Loan, White agreed to release Wong and Day from "all further . . . claims . . . known or unknown, present or contingent, arising out of or resulting from the Loan Documents." App. 106. His reformation counterclaim fits that description, so the Court rightly dismissed it.[9]

*  *  *

For these reasons, we will vacate the Court's summary judgment as to the BSC Loan and remand, affirm its summary judgment as to the Amended Wong/Day Loan, and affirm its dismissal of White's counterclaim for reformation.

---

[8] In his reply brief, White points to Wong and Day's argument to the District Court "that the language of the agreements precluded White's counterclaim," and replies that this contention "ignored White's argument that such language did not reflect the true intent of the parties and thus needed to be reformed." Reply Br. 24. This passing, generalized reference to the parties' intent on "the language of the agreements," made for the first time in White's reply brief, does not preserve the argument for our review. *See Garza v. Citigroup Inc.*, 881 F.3d 277, 284 (3d Cir. 2018); *John Wyeth & Bro. Ltd.*, 119 F.3d at 1076 n.6.

[9] White's argument that the Court improperly dismissed this claim *sua sponte* is meritless. Wong and Day had moved to dismiss the claim, Mot. to Strike at 1, No. 1:13-cv-00044 (Aug. 8, 2013), ECF No. 17; Mem. in Supp. at 17–18, No. 1:13-cv-00044 (Aug. 8, 2013), ECF No. 18, and both parties briefed the issue, Opp'n to Mot to Strike at 7–8, No. 1:13-cv-00044 (Aug. 22, 2013), ECF No. 27; Reply to Opp'n at 3–4, No. 1:13-cv-00044 (Sept. 5, 2013), ECF No. 30.